FILED
2013 Aug-07  PM 04:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

JEFFREY A. BURBACK,

     PLAINTIFF,

v.                                     CASE NO.: CV-12-J-1987-S

BNSF RAILWAY COMPANY,
INC., et al.,

     DEFENDANTS.

## MEMORANDUM OPINION

Pending before the court is the defendant's motion for summary judgment (doc. 20), memorandum and evidence in support of said motion (docs. 21 and 22), to which the plaintiff has failed to respond.[1]  Having considered the pleadings, evidence and memorandum of the defendant, the court finds as follows:

## I.  Factual Background

Plaintiff sues his past employer for violation of Title VII, 42 U.S.C. §§ 2000e *et seq*., 42 U.S.C. § 1981a and 42 U.S.C. § 1981 for race discrimination, sex discrimination/hostile environment, retaliation and adverse employment action due

---

[1]Pursuant to Exhibit A of the Scheduling Order entered by the court on September 25, 2012, the plaintiff had fourteen (14) days to respond to the motion for summary judgment from the date said motion was filed.  Due to a joint motion for extension of time (doc. 14), the court extended the deadline for motions for summary judgment to July 10, 2013 (doc. 15) and the defendant's motion was filed that date.  Thus, under Exhibit A, plaintiff's response to the motion for summary judgment was due no later than July 24, 2013.  To date, no response has been received.

to his termination; violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*., for age discrimination, retaliation and adverse employment action; and for state law claims of assault and battery, outrage, and negligence and wantonness.

The plaintiff began working for defendant as a carman in Minneapolis in 1990. Plaintiff depo. at 39, 42.  He became a relief supervisor, which was still a union represented job.  Plaintiff depo. at 43.  The plaintiff transferred to Kansas City as an exempt foreman, which involved the same work, but was outside of union representation. *Id.* at 47-48.  The plaintiff was then promoted to mechanical foreman, in Birmingham, Alabama.  *Id.* at 51.  The plaintiff next applied for and received a promotion to Assistant General Foreman.  *Id.* at 69-70.  During the relevant time period, he reported to Rudy Jaramillo, who replaced Brett Bridges, the General Foreman in Memphis, Tennessee.  *Id.* at 75-76, 83.  Over him was Billy Fleck, the Superintendent, who worked out of Springfield Missouri.  *Id.* at 55.  Mark Grubbs replaced Fleck in the summer of 2009.[2]  *Id.* at 77, 95.  *Id.* As Assistant General

---

[2]In June 2010, the plaintiff was asked to speak with Brandon Mabry about Grubbs because other foremen were having problems with Grubbs.  Plaintiff depo. at 110-111.  The plaintiff told Mabry about his issues with Grubbs, which included being gruff and inappropriate language, but did not say anything about Grubbs treating younger or black employees better than older white employees.  *Id.* at 116-117, 123.  About a month later, Grubbs informed plaintiff that he knew who talked about him and that he would "get these people." *Id.* at 158-159.  The plaintiff did not report this to anyone prior to June 2011. *Id.* at 162. He also agreed that after this time frame, he, Jaramillo and Grubbs all worked better together.  *Id.* at 241.

Foreman, Alan Botts and Howard Brown were supervisors who reported to plaintiff. *Id.* at 75, 79.

During the 2010 time frame, the plaintiff asserts Jaramillo inappropriately grabbed his knee and gave it a squeeze while riding with Jaramillo driving. Plaintiff depo. at 132-133. At the same time Jaramillo smiled at him and plaintiff felt like it was sexual in nature. *Id.* at 133-135. However, he never actually propositioned plaintiff. *Id.* at 135. Plaintiff reported this to Grubbs about a week later. *Id.* at 138-139. This happened a second time when Grubbs was in the car with plaintiff and Jaramillo, Jarmarillo made a joke out of it and everyone laughed, but plaintiff felt like everyone was laughing about him being a homosexual. *Id.* at 140-142. The third and final occasion when Jaramillo touched his knee was in April 2011 in a restaurant, with Jaramillo's girlfriend present. *Id.* at 144, 150. The plaintiff was sitting on a bar stool when Jaramillo walked up to him, placed his hands on plaintiff's knees, and blew a kiss at him, then walked away laughing about it. *Id.* at 145. Grubbs was present and laughed about the incident too. *Id.* at 146-147. The plaintiff never complained about Jaramillo to anyone other than Grubbs prior to June 2011 because he did not want anyone thinking his was a homosexual. *Id.* at 149, 151.

On June 11, 2011, Grubbs and Jamarillo came to Birmingham to remove plaintiff from service. Plaintiff depo. at 180-181, 189. According to Kelli Courreges,

who was then the regional director of human resources for the south region of BNSF, Botts contacted Grubbs and made allegations concerning "things going on in Birmingham." Courreges depo. at 24, 87; plaintiff ex. 13 to Courreges depo. An anonymous call to the employee hotline was also received, which Botts later stated he made. Courreges depo. at 24, 87. The anonymous call concerned plaintiff having Botts use a company vehicle to pick up plaintiff's children. Plaintiff ex. 10 to Courreges depo. Alan Botts also complained about plaintiff sending him to pick up the plaintiff's boat. Plaintiff depo. at 180-181, 187; defendant ex. 15 to plaintiff depo. Grubbs and Jamarillo asked plaintiff about these incidents. Plaintiff depo. at 190, 244-245.

The plaintiff was placed on administrative leave with pay pending an investigation. Plaintiff depo. at 192. He agrees that asking Botts to pick up his daughter violated company policy. *Id.* at 245, 253; defendant ex. 3 to plaintiff depo. at 0456. Similarly, driving his own kids in his company car was also a violation of company policy, but plaintiff did this from time to time. Plaintiff depo. at 94, 245-246, 252; *see also* def. ex. 10 to plaintiff depo. According to Botts, plaintiff had asked him to pick up his children, repair his garage door, pick up his boat using a company car, house sit his pets while plaintiff was on vacation, and pick up a Federal Express package for plaintiff's wife's business and pay for it with a defendant charge

card.  Botts declaration, at ¶ ¶ 6-7, submitted as defendant ex. H; plaintiff ex. 3 to Courreges depo.  The plaintiff admits he asked Botts to do each of these things. Plaintiff depo. at 22-23, 184, 253, 254, 261; *see also* defendant ex. 9 to plaintiff depo.  However, the plaintiff states he asked Botts for his help with these things, and Botts said "sure."  Plaintiff depo. at 244, 253; def. exs. 15 and 16 to plaintiff depo.  When plaintiff requested Botts pick up his daughter on June 7, 2011, Botts became frustrated and worried about driving plaintiff's children in a company vehicle.  Botts declaration, ¶ 8.  Therefore, he reported these events to Grubbs.  *Id.*

The plaintiff also admitted using the Sam's charge card supplied by defendant to purchase personal items such as groceries.  Plaintiff depo. at 100-101, 262.  He admits this violated defendant's Code of Conduct.  *Id*. at 202-203.  The plaintiff states he told defendant he would pay the bill for these, but was terminated first.  *Id*. at 262. He also used his wife's business to purchase hats for defendant employees, but states this was not technically a violation of company rules because a vendor actually purchased the hats from his wife and then sold them back to the employees.  *Id*. at 263-264.  The plaintiff also used one of the defendant's contractors, Bill Cranford, to work on the deck on his house, but explained the contractor did the work as a friend and did not get paid for it.[3]  *Id*. at 22, 171-172, 268.

---

[3]Bill Cranford and his son Tim ran Tim's Auto & Wrecker, which did repairs for defendant through contract.  Plaintiff depo. at 164.  When Tim Cranford was hired by defendant,

After he was placed on leave, plaintiff wrote a letter concerning what he perceived as wrongdoing by other management personnel in defendant's employ, and particularly Grubbs, such as fishing trips paid for by vendors and Jamarillo's touching him. Plaintiff depo. at 193-213. He also made allegations of improper bidding. *Id*. at 220-221. Thus, Grubbs was removed from the investigation concerning allegations against plaintiff and the allegations against Grubbs were investigated as well. Courreges depo. at 89, 91-92; plaintiff ex. 14 to Courreges depo. Plaintiff also asserted that Grubbs created a hostile environment based on age and race, but when asked on what he based this statement, plaintiff responded that he does not remember other than Grubbs using "F bombs and stuff." Plaintiff depo. at 238. Specifically, the plaintiff could remember no negative comments toward white people or older people. *Id*. at 239. He testified that he had no facts that would justify the belief that Grubbs had a preference for younger people in hiring or in employment. Plaintiff depo. at 240. *See also* defendant ex. 12 to plaintiff depo.

About a month after he was placed on administrative leave, the plaintiff was interviewed about the allegations made by Botts and then terminated. Plaintiff depo. at 248-252, 268-269; defendant exs. 18 and 19 to plaintiff depo. He does not know

---

he gave all the contract work for defendant to his father. *Id*. at 164, 168-169. In investigating plaintiff, issues concerning irregularities in these bills also arose. Plaintiff depo. at 165; plaintiff ex. 14 to Courreges depo.

who made the decision to terminate him, does not know if Grubbs was involved in the decision, and knows of no one accused of similar allegations who has not been terminated.[4]  *Id*. at 287.  His salary at the time was $88,000.00 per year, plus he earned bonuses.  *Id*. at 313. He was told he could use his seniority to return to a union position in Minneapolis, but declined to do so .  Plaintiff depo. at 270-272; defendant exs. 18 and 20 to plaintiff depo.; Courreges depo. at 27.

In his EEOC Charge the plaintiff asserted he was terminated in retaliation for his earlier complaints about Grubbs to Mabry.  Plaintiff depo. at 276-277, 280; defendant ex. 21 to plaintiff depo.  However, he has no evidence which supports his belief that Grubbs had anything to do with the complaints made against him by Botts.  Plaintiff depo. at 278, 282.  Additionally, in spite of the claims in his complaint, the plaintiff testified that he did not believe he was terminated because of his race.  *Id*. at 283.  He stated he thought he was terminated in part because of his age because Grubbs "did not like older guys in their forties and fifties that had a lot more experience than he did."[5] *Id*. The plaintiff also asserted Grubbs was harder on him because of his age, but could name no one Grubbs was easier on.  *Id*. at 289.  He

---

[4]Due to the numerous policy and ethical violations, Courreges determined plaintiff should be terminated.  She reported her recommendation to Steven Klug, Vice President of Human Resources, who agreed and approved that decision.  Declaration of Courreges, ¶¶ 12, 15.

[5]During his deposition, the plaintiff learned Grubbs had recommended him for a promotion which was pending when Botts raised his complaints.  Plaintiff depo. at 178, 180.

testified that this was "personal conjecture and there's other people that think the same way." *Id*. at 284.

In October 2011 the plaintiff was hired by another railroad company, but never actually began that employment.  Plaintiff depo. at 35-36. IN December 2011 the plaintiff accepted a position with New Jersey Rail Carriers, making $92,000.00 per year. *Id*. at 32-35  He quit in April 2012. *Id*.

In December of 2012, the plaintiff was diagnosed with Parkinson's disease. Plaintiff depo. at 65.  In January 2013 the plaintiff began receiving occupational disability checks through the Railroad Retirement Board, due to an ongoing back injury. *Id*. at 27-29.  However, because of his back, the plaintiff has had limitations on lifting and working more than twenty hours per week since July 2012. *Id*.  at 28-29, 297-298.

## II. Standard of Review

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Fed.R. Civ.P 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986).  An issue is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case.  It is "genuine" if the record taken as a whole could lead a rational trier of fact to find

for the nonmoving party.  *Allen v. Tyson Foods, Inc*., 121 F.3d 642, 646 (11th Cir.1997).

The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the nonmovant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970). Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp*., 907 F.2d 1077, 1080 (11th Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990).  In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986).  Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc*., 419 F.3d 1169, 1181 (11th Cir.2005).  The language of Rule 56 "mandates the entry of summary judgment ... against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322-23. With these standards in mind, the court considers each of the plaintiff's claims.

### III.  Legal Analysis

The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11th Cir.2001); *Stewart v. Booker T. Washington Ins*., 232 F.3d 844, 848 (11th Cir.2000).  Although the plaintiff has failed to file a response to the defendant's motion for summary judgment, no procedural tool for a default summary judgment exists under Fed.R.Civ.Pro. 56.  The court must still find that summary judgment is appropriate from the pleadings and the evidence.  However, "the language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[6]  *Celotex Corp.,* 477 U.S.

---

[6]In its current incarnation, Rule 56(c)(1), Fed.R.Civ.Pro., states as follows:

(1)  ***Supporting Factual Positions.***  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

    (A)  citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for

at 322-23.  With these standards in mind, the court considers each of the plaintiff's claims.

***Race Discrimination*** (Count I)

A plaintiff may prevail on an employment discrimination claim by either proving that intentional discrimination motivated the employer or producing sufficient evidence to allow a rational trier of fact to disbelieve the legitimate reason proffered by the employer, which permits, but does not compel, the trier of fact to find illegal discrimination.  *Wilson v. B/E Aerospace, Inc*,. 376 F.3d 1079, 1088 (11th Cir. 2004), citing *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 147-48, 120 S.Ct. 2097, 2108-09, 147 L.Ed.2d 105 (2000).

Plaintiff asserts that the above facts constitute race and gender discrimination as well as retaliation.   As the court can find no direct evidence of discrimination, the court must apply the three prong test fashioned by the Supreme Court in  *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973), as required for circumstantial evidence. *See also Texas Department of Community Affairs v. Burdine,* 450 U.S. 248; 252-253; 101 S.Ct. 1089, 1093-1094 (1981).  First, the plaintiff must

purposes of the motion only), admissions, interrogatory answers, or other materials; or
(B)   showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Federal Rules of Civil Procedure Rule 56.

establish a *prima facie* case of discrimination. *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824. Establishment of a *prima facie* case creates a presumption that the employer unlawfully discriminated against the employee. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-1528 (11th Cir. 1997).  Assuming the employee meets this burden, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the alleged discriminatory employment action. *Harris v. Shelby County Board of Education,* 99 F.3d 1078, 1083 (11th Cir.1996).  The defendant can feasibly present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted. *Brown v. American Honda Motor Co., Inc.,* 939 F.2d 946, 950 (11th Cir.1991), *cert. denied*, 502 U.S. 1058 (1992)(quoting *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 596 (11th Cir.1987).

An employer's stated reason is not a pretext unless it is shown that both: (1) the reason was false; and (2) the real reason was unlawful. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). A plaintiff may show a pretext either "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir.2005). In both instances, a plaintiff must

show pretext with "concrete evidence in the form of specific facts." *Bryant*, 575 F.3d at 1308. Mere "conclusory allegations and assertions" will not suffice. *Id.*

Once a defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination drops from the case. *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094 and n. 10.  The plaintiff must then demonstrate by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather a mere pretext for discrimination.  *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825.  The focus of the case after the defendant meets its burden of production is on the defendant's subjective intent and the motivation behind the defendant's adverse employment action directed at plaintiff. *Harris*, 99 F.3d at 1083.

The plaintiff meets his prima facie burden of proof by establishing that (1) he is a member of a protected class; (2) he was qualified for the position;  (3) he was subjected to an adverse employment action; and (4) he was treated less favorably by her employer than similarly situated employees outside his protected class. *Maynard v. Board of Regents of Div. of Fla. Dep't of Educ. ,* 342 F.3d 1281, 1289 (11th Cir.2003)*; Rice-Lamar v. City of Fort Lauderdale,* 232 F.3d 836, 842-43 (11th Cir.2000); *EEOC v. Joe's Stone Crab, Inc.,*  220 F.3d 1263, 1286 (11th Cir.2000). "To show that employees are similarly situated, the plaintiff must show that the

employees are similarly situated in all relevant respects...." *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir.2003) (internal quotation marks omitted).

The court has carefully read the defendant's evidentiary submissions.  Lacking from the submissions is any evidence at all that the plaintiff was treated any differently than any other employee found in violation of similar provisions of the defendant's Code of Conduct.  Even if the plaintiff could show evidence that he was treated poorly by Grubbs because of his race, there is no evidence that Grubbs made the decision to terminate plaintiff's employment.  Rather, the evidence before the court specifically reflects that Grubbs was not a part of this decision making process.  *See e.g.*, Grubbs Declaration, ¶ 15 (submitted as defendant ex. C); Courreges Declaration, ¶ 15.

Additionally, the defendant has provided an explanation for its actions that is not discriminatory in nature.  *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1269 (11th Cir.1999).  The defendant asserts the plaintiff was terminated from his position in Birmingham for a variety of violations of its Code of Conduct.  The plaintiff could have returned to his job as a carman, but elected not to do so.  The court finds the facts simply do not support the plaintiff's allegation of race discrimination.  Having considered the foregoing, and being of the opinion that the plaintiff has failed to

14

demonstrate any genuine issue of material fact on his claims of race discrimination, such that a jury could find in his favor on this claim, the court shall grant the defendant's motion for summary judgment on these claims by separate order.

**_Retaliation_** (Count I)

Under Title VII, the plaintiff does not have to prove the underlying claim of discrimination in order to establish a retaliation claim. *Taylor v. Runyon*, 175 F.3d 861, 869 (11th Cir.1999). To establish a prima facie case of retaliation for engaging in protected activity, the court must use the *McDonnell-Douglas* burden shifting standard, discussed in detail, *supra*. The plaintiff must show that he (1) engaged in Title VII protected activity; (2) an adverse employment action occurred; and (3) a causal connection between the protected activity and the adverse employment action exists. *Sullivan v. National Railroad Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir.1999); *see also Runyon*, 175 F.3d at 868, citing *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993).

The only protected activity the court can find in close temporal proximity to the plaintiff's adverse employment action would be plaintiff's report of wrongdoing against Grubbs and claim of sexual harassment by Jaramillo.[7] However, both of these

---

[7]The plaintiff makes reference to his 2010 complaints against Grubbs, but also admits that after the 2010 phone call with Mabry, plaintiff's working relationship with Grubbs improved.

reports occurred after Botts' report of plaintiff's misdeeds and after plaintiff was placed on paid administrative leave. Thus, neither Botts' reports of plaintiff's violations nor plaintiff's placement on leave could be in retaliation for his complaints against his supervisors. Thereafter, Grubbs was removed from the investigation of plaintiff.

To establish a causal connection, a plaintiff must show "that the protected activity and adverse action are not wholly unrelated." *Clover v. Total System Services, Inc.,* 176 F.3d 1346, 1354 (11th Cir.1999) (quoting *Simmons v. Camden County Bd. of Educ.,* 757 F.2d 1187, 1189 (11th Cir.1985)). This element is satisfied where the plaintiff provides "sufficient evidence that the decision-maker became aware of this protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action." *Farley v. Nationwide Mut. Ins. Co.,* 197 F.3d 1322, 1337 (11th Cir.1997). Here, the plaintiff has failed to make any such showing such that a reasonable jury could find in his favor on this claim.

### *Age Discrimination* (Count II)

The burden of proof for ADEA claims differs from the employment discrimination statutes. "[T]he ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor." *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 174, 129 S.Ct. 2343, 2349, 174 L.Ed.2d 119

(2009) (emphasis added).  Instead, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Id*. at 2351.  In general, a plaintiff may assert a prima facie case of unlawful age discrimination by alleging sufficient facts to show that: (1) he is a member of the protected group of persons over age forty; (2) he suffered an adverse employment action; (3) he was replaced by a person outside the protected group, or at least by a substantially younger person (or was rejected for a position in favor of the younger person); and (4) he was qualified for the job at issue. *See, e.g., Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir.1998); *Mauter v. Hardy Corp.*, 825 F.2d 1554, 1557 (11th Cir.1987); see also *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) (an ADEA plaintiff must show that she was replaced by someone "substantially younger," not necessarily by someone under age forty).

The plaintiff testified that he had no facts that would justify the belief that Grubbs had a preference for younger people in hiring or in employment.  Plaintiff depo. at 240.  Nothing in the evidence before this court could feasibly support a jury finding that the plaintiff would not have been terminated "but-for" his age.  The plaintiff admits this.  Evidence also supports a finding that Grubbs did not make the decision to terminate plaintiff and in fact was removed from the investigation against

17

plaintiff completely.  The plaintiff has also failed to produce any evidence as to who may have replaced him, thus failing to satisfy his burden of creating a  prima facie case of age discrimination.  Because of this complete lack of evidence that the plaintiff was discriminated against because of his age, the court shall grant defendant's motion for summary judgment on this count of the complaint.

### *Sexual Harassment* (Count III)

As to plaintiff's sexual harassment claim, that too was investigated by defendant while the plaintiff was on administrative leave.  Grubbs denied ever received a complaint from plaintiff about the knee touching incident.  Courreges depo. at 97-98.  Rather, he related that while Jaramillo was driving, plaintiff was in the front seat, both men reached for the middle consol at the same time, and nudged each other.  *Id*. at 99.  Jaramillo then stated "if you want to be close to me, just tell me."  *Id*.  Everyone laughed, and nothing else was ever said about it.  *Id.*; *see also* plaintiff ex. 16 to Courreges depo.  Another employee, Denny Luft also witnessed this incident and confirmed that it occurred in this manner.  Courreges depo. at 101-102.  Grubbs was given a letter of reprimand and a coaching because the incident had made plaintiff uncomfortable.  *Id*., at 105-107.   Jamarillo was also disciplined for inappropriate touching.  Plaintiff exs. 16, 17 and 21 to Courreges depo.

18

To demonstrate sexual harassment, a plaintiff must show: "(1) that he belongs to a protected group; (2) that he has been subject to unwelcome sexual harassment; (3) that the harassment was based on his sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment; and (5) that there is a basis for holding the employer liable." *Pipkins v. City of Temple Terrace, Florida,* 267 F.3d 1197, 1199 (11th Cir.2001). The court begins with the "severe or pervasive" branch of this analysis, as it is wholly dispositive of this claim. In *Clark County School Dist. v. Breeden*, the Supreme Court stated,

> [S]exual harassment is actionable under Title VII only if it is "so 'severe or pervasive' as to 'alter the conditions of [the victim's] employment and create an abusive working environment.' " *Faragher v. Boca Raton*, 524 U.S. 775, 786, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (quoting *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (some internal quotation marks omitted)). *See also Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 752, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (Only harassing conduct that is "severe or pervasive" can produce a "constructive alteratio[n] in the terms or conditions of employment"); *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (Title VII "forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment").

*Id.*, 532 U.S. 268, 270, 121 S.Ct. 1508, 1509-1510 (2001).

The plaintiff's allegations fall short of the minimum recognized as harassment by the Eleventh Circuit. *See e.g., Gupta v. Florida Board of Regents*, 212 F.3d 571, 585 (11th Cir. 2000). Assuming the plaintiff subjectively perceived the behavior in

question to be severe, which the court finds the evidence does not support, plaintiff's subjective perception was not objectively reasonable.  At most, taking the evidence in the light most favorable to the plaintiff, a supervisor made several joking comments to plaintiff over a number of months, for which that supervisor was later disciplined.  Even though the plaintiff was bothered by these comments and touchings, the environment described by the plaintiff in no manner reaches the "severe or pervasive" test.

### *Assault and Battery, Negligence and/or Wantonness, and Outrage* (Counts V-VI)[8]

Alabama law provides that an employer can be held vicariously liable for the intentional torts of its agent if (1) the agent's wrongful acts were in the line and scope of his employment; (2) the acts were in furtherance of the employer's business; or (3) the employer participated in, authorized, or ratified the wrongful acts. *Potts v. BE & K Constr. Co.*, 604 So.2d 398, 400 (Ala.1992).  To prove that the employer ratified the wrongful acts:

> a complaining employee must show that the employer (1) had actual knowledge of the tortious conduct of the offending employee and that the tortious conduct was directed at and visited upon the complaining employee; (2) that based on this knowledge, the employer knew, or should have known, that such conduct constituted sexual harassment

---

[8]The complaint contains no Count IV.  Both Assault and Battery and Outrage are labeled as "Count V."

and/or a continuing tort; and (3) that the employer failed to take 'adequate' steps to remedy the situation.

*Id*. No reasonable jury could find that defendant ratified Jaramillo's conduct, even assuming that the conduct described could constitute an assault and battery under Alabama law. Upon plaintiff informing Grubbs' superiors about Jaramillo's conduct, defendant investigated the claim, and counseled Jaramillo to avoid such conduct in the future.

To recover on negligent supervision and training claims against an employer, "[a] plaintiff must establish 'by affirmative proof' that the employer actually knew of the incompetence [of the employee], or that the employer reasonably should have known of it." *Southland Bank v. A & A Drywall Supply Co.*, 21 So.3d 1196, 1215–16 (Ala.2008) (citation omitted). The plaintiff meets this burden by either showing "specific acts of incompetency and bringing them home to the knowledge of the master, or by showing them to be of such nature, character, and frequency that the master, in the exercise of due care, must have had them brought to his notice." *Lane v. Cent. Bank of Ala., N.A.*, 425 So.2d 1098, 1100 (Ala.1983) (citation omitted); *see also Armstrong Bus. Servs., Inc. v. AmSouth Bank,* 817 So.2d 665, 682 (Ala.2001). Likewise, a claim for wanton supervision requires the plaintiff to establish by affirmative proof that the employer actually knew of the employee's incompetence

21

or reasonably should have known of it. *See AmSouth Bank*, 817 So.2d at 683. Additionally, where there is insufficient evidence to support the finding that the alleged tortfeasor-employee committed the tort, the employer also cannot be liable for its hiring or supervision.  In such cases, the Alabama Supreme Court has explained that an employer may not be held directly liable on a theory of negligent supervision or training because no tort occurred. *Jones Express, Inc. v. Jackson*, 86 So.3d 298, 303–04 (Ala.2010) (per curiam).

The court has no evidence before it from which a reasonable jury could conclude that defendant negligently or wantonly hired, supervised or retained Grubbs or Jaramillo.

Even more problematic for plaintiff is his claim for outrage.  "The tort of outrage is a very limited cause of action that is available only in the most egregious circumstances." *Thomas v. BSE Indus. Contractors, Inc.,* 624 So.2d 1041,1044 (Ala.1993). Accordingly, the tort is appropriate only when the conduct alleged is so "outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Tinker v. Beasley*, 429 F.3d 1324, 1329–30 (11th Cir.2005) (citing *American Rd. Svc. Co. v. Inmon*, 394 So.2d 361, 365 (Ala.1980)). Moreover, "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are

insufficient to create liability for outrage, instead "plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language and to occasional acts that are definitely inconsiderate and unkind." *Surrency v. Harbison*, 489 So.2d 1097, 1105–06 (Ala.1986) (quoting Restatement (Second) of Torts, § 46, Comment (d) (1965)).

Taking all of plaintiff's contentions about Jaramillo's actions as true, plaintiff's complaint fails to reach the level of egregiousness required to state a claim for outrage.

## IV.  Conclusion

The court having considered the foregoing, and finding that the plaintiff has failed to establish any genuine issue of material fact on any claim in his complaint, the court finds defendant's motion for summary judgment on all counts of the plaintiff's complaint is due to be **GRANTED** and shall so rule by separate Order.

**DONE** and **ORDERED** this the 7th day of August, 2013.

INGE PRYTZ JOHNSON
SENIOR U.S. DISTRICT JUDGE